Filed 7/29/25  Manuao v. L.A. Downtown Medical Center CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| FATIMA MANUAO,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>L.A. DOWNTOWN MEDICAL CENTER, LLC, et al.,<br><br>        Defendants and Respondents. | B337130<br><br>(Los Angeles County<br>Super. Ct. No. 20STCV30402) |


        APPEAL from a judgment of the Superior Court of Los Angeles County, Stephanie W. Bowick, Judge.  Affirmed.
        Gary Rand & Suzanne E. Rand-Lewis, Timothy D. Rand-Lewis and Suzanne E. Rand-Lewis for Plaintiff and Appellant.
        Fisher & Phillips, Frank A Magnanimo and Danielle S. Zobel for Defendants and Respondents.

_____

# INTRODUCTION

Plaintiff Fatima Manuao appeals from the judgment of the trial court after it granted the unopposed motion for summary judgment filed by Manuao's former employer and codefendants on her underlying wrongful termination action. Manuao did not file any opposition to the motion for summary judgment or object to defendants' evidence, and her counsel did not appear for argument on the motion or request a continuance. Manuao argues the trial court should have denied the motion for summary judgment because defendants did not shift the summary judgment burden to Manuao to show a genuine issue of material fact. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Operative Complaint*

The underlying action arises from Manuao's termination from her employment as director of the business office of the Silver Lake Medical Center (SLMC), a hospital owned by defendant Los Angeles Downtown Medical Center, LLC (LADMC). Manuao was terminated in November 2019, and she filed a complaint against LADMC and several individuals and entities in August 2020.

Manuao's operative First Amended Complaint alleged causes of action against all defendants for: (1) breach of express and implied contract; (2) breach of the covenant of good faith and fair dealing; (3) wrongful termination in violation of public policy; (4) discrimination in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) and/or the California Family Rights Act (CFRA) (Gov. Code, § 12945.2

2

et seq.); (5) harassment in violation of FEHA and/or CFRA; (6) retaliation in violation of FEHA and/or CFRA; (7) failure to evaluate or accommodate disability in violation of FEHA and/or CFRA; (8) unfair business practices (Bus. & Prof. Code, § 17200); (9) concealment (of the details of the hospital sale and how it would affect her employment); (10) intentional infliction of emotional distress; (11) violation of the Worker Adjustment and Retraining Notification Act (WARN Act) (Lab. Code, § 1401 et seq.); (12) unsafe workplace conditions (Lab. Code, §§ 232.5, 6310); (13) whistleblower retaliation (Lab. Code, § 1102.5); and (14) failure to provide personnel records (Lab. Code, § 1198.5). Manuao sought compensatory and punitive damages, and "injunctions against the appropriate job position and to purge [her] employment records of all derogatory information and to preclude the dissemination of that information to prospective employers, employees or other persons."

The defendants in addition to LADMC were Paula Hildy, director of human resources at LADMC; Vicki Rollins, a corporate principal and owner of LADMC; William Nelson, a governing board member of LADMC who oversaw the day-to-day business operations of the hospital; and Rollins Nelson LTC Corp. and Rollins Nelson GRP LLP (jointly, the Rollins Nelson entities).

Defendants filed an answer denying Manuao's allegations and asserting 23 affirmative defenses, including failure to state a claim and lawful non-pretextual reasons for termination.

Manuao was deposed on at least three occasions before defendants moved for summary judgment. Defendants' attorney never received any communication from Manuao's attorney requesting the deposition availability of "any of Defendants' employees or witnesses . . . in this litigation."

3

B.  *Summary Judgment Motion*

On January 4, 2023, defendants filed a motion for summary judgment, or in the alternative summary adjudication on each cause of action and on Manuao's claim for punitive damages, with a hearing set for November 16, 2023.  Defendants included a detailed separate statement of undisputed material facts in support of their motion.  Supporting evidence included Manuao's deposition testimony on May 24 and October 4, 2022, declarations of Hildy, Rollins, and Nelson, the LADMC employee handbook, workplace emails, medical notes, employee records, and paystubs. Manuao's attorney was electronically served as well as personally served with physical copies of the motion and all supporting documents.

1.  *Facts set forth in separate statement*

a.  *Manuao's employment with LADMC*

Manuao worked at SLMC under various owners over 17 years, beginning in approximately 2002 until her termination in 2019.  Manuao is of Samoan-American national origin and was 51 years old at the time she was laid off.

LADMC began the process of purchasing and acquiring SLMC in 2018.  On December 14, 2018, SLMC, then owned by Success Healthcare 1, LLC (Success), issued a notice to all SLMC employees notifying them of the purchase and transition process (the "WARN notice").  Success, not LADMC, was responsible for issuing the WARN notice at that time.  Manuao was never an officer, director, or shareholder of Success.

The WARN notice stated LADMC had agreed to hire "substantially all" of Success's employees "into the same or similar positions."  Hildy forwarded the WARN notice to Manuao

4

and other managerial employees.  The hospital sale closed on February 12, 2019, and LADMC did not lay off any SLMC employees formerly employed by Success in the first 30 days following that date.  On or about March 5, 2019, LADMC became Manuao's employer.  Manuao's subsequent paychecks reflected that LADMC, and not any other entity, was her legal employer. The Rollins Nelson entities were not affiliated with the operations of LADMC or its employees, did not pay her or control her working conditions, and did not create or enforce LADMC's employment rules and policies.

Manuao received LADMC's Employee Handbook ("Handbook") in March 2019 and signed an acknowledgement confirming she received the policies set forth in the Handbook. The policies prohibited unlawful discrimination and harassment based on age, disability, race, national origin, and other protected characteristics; prohibited retaliation for reporting harassment or discrimination; and specified that employment with LADMC was "at-will" and "may be terminated for any reason or no reason, with or without cause or notice."  Manuao and LADMC never agreed to modify the "at-will" status of her employment.  The handbook stated that LADMC is an "Equal Employment Opportunity Employer" and Hildy and Rollings declared there was no practice, policy, or procedure at LADMC favoring any racial or ethnic group in terms of wages, scheduling, promotions, or benefits.

LADMC never received any verbal or written complaints from Manuao of discrimination, harassment, or retaliation in violation of the hospital's policies.  Manuao never complained to anyone in LADMC's management or human resources

5

department that she was exposed to an unsafe, illegal, and/or unlawful work environment.

Manuao testified in her deposition that Nelson and the hospital employees addressed Rollins as "Miss Vicki," which Manuao understood to be a Filipino custom. Rollins declared she did not require anyone to address her as "Miss Vicki," and Nelson and the employees voluntarily addressed her this way as a sign of courtesy and respect. The salutation was not connected to anyone's race, ethnicity or national origin, and Rollins was never upset with Manuao for not referring to her as "Miss Vicki."

b. *Business office management concerns*

Following LADMC's acquisition of SLMC, Rollins and Nelson learned that Manuao had failed to timely respond to LADMC's cost-reporting consultants. Nelson and Rollins declared that one of Manuao's "most important and fundamental duties" as business office director was to submit cost reports to Medicare to receive funding for the hospital. They counseled Manuao that not communicating with the consultants to timely submit cost reports to Medicare could jeopardize the Medicare funding needed to operate the hospital. The business staff workers supervised by Manuao also exhibited low productivity and poor attention to detail.

In or around June 2019, Rollins directed existing employee Lisa Mancilla, age 59, to assist Manuao in the business office. Manuao did not report to Mancilla, kept her office, and continued to supervise, direct, and make recommendations as to hiring, firing, and salary of the business office staff workers.

In September 2019, Nelson rearranged the business office furniture, cubicles, and decor. Nelson did not move Manuao's

6

furniture or personal belongings in her separate office. Manuao told Nelson she disagreed with his decision to rearrange the cubicles, but she never stated to Nelson or anyone else at LADMC she believed this was done because of her age, national origin, or medical condition.

          c.      *Manuao takes medical leave and files a workers' compensation claim*

In September 2019, LADMC received a two-and-a-half page email message from Armani Taeleife, a claims specialist in the business office who is also Manuao's niece. Taeleife's email expressed frustration with conflicting directives from multiple superiors about the process for Medi-Cal billing, and stated that Manuao was the only one who had helped her correct erroneous billing charges.

Nelson and Rollins met with Manuao on September 26, 2019, with Hildy present, to discuss Taeleife's email. Nelson questioned Manuao about the email, including whether Manuao helped Taeleife draft the message or had "ghost written" it. There was no yelling or physical intimidation toward Manuao by Nelson, Rollins, or Hildy. Manuao denied any involvement with drafting the email, and she did not face any counseling or discipline as a result.

Following this meeting, Manuao left work early and consulted with her doctor. Manuao reported high blood pressure brought on by stress and anxiety at her job. Manuao's doctor wrote a note placing her off work until October 1, 2019, which she delivered to LADMC's human resources office. On October 4, 2019, Manuao submitted another medical note extending her leave of absence to October 14. On October 17, Manuao, having

not returned to work, submitted another note extending her leave to October 28.

On or about October 28, 2019, Manuao returned to work with no work restrictions. Upon her return, Manuao resumed her regular duties and did not request any job accommodations. Manuao took prescription medication for her high blood pressure and hypertension, but they did not interfere with her work duties. Hildy approved additional time off for Manuao to attend her follow-up medical appointments.

On or about November 7, 2019, LADMC received correspondence from a lawyer that included a claim form to open a worker's compensation case for Manuao. LADMC timely processed the form for Manuao's claim, which Manuao testified was resolved.

### d. *Manuao is laid off*

On November 20, 2019, Nelson and Rollins called Manuao into a meeting and told her LADMC was eliminating her position. They informed Manuao that Rollins and Mancilla would absorb her job duties into their own existing positions. Manuao signed a written termination memorandum on November 21, 2019, and left blank the space for employee comments.

LADMC never replaced Manuao with a new hire, and Rollins and Mancilla continue to perform Manuao's former duties. In 2019, LADMC laid off seven other employees due to job elimination and/or outsourcing.

On November 26, 2019, LADMC mailed Manuao her employee personnel file via FedEx, in response to her written request earlier that day.

Manuao testified at her deposition that she did not seek any medical treatment in connection with her layoff from LADMC, and she is not taking medication specifically for her alleged emotional distress symptoms.

2. *Grounds for motion*

For purposes of their motion for summary judgment or summary adjudication of Manuao's claims, defendants conceded that at the time she was terminated from employment, Manuao was a member of a protected class ("over 40 years old, was of Samoan-American national origin, and could have been perceived as disabled due to her medical leave of absence"), was performing her job competently prior to her layoff, and suffered an adverse employment action. Hildy's declaration described the sale of SLMC to LADMC; Manuao's at-will employment by LADMC; Manuao's medical leave; the approval of Manuao's medical appointment requests; the lack of complaints by Manuao; the justification for the elimination of Manuao's position; LADMC's nondiscriminatory practices, and the production of Manuao's personnel file. Rollins's declaration described the sale of SLMC to LADMC; Manuao's at-will employment by LADMC; the Rollins Nelson entities' lack of affiliation with LADMC; Mancilla's age and appointment to assist Manuao; the meeting regarding the Taeleife email; the concerns with Manuao's productivity, response time, and attention to detail that led to the elimination of her position; the lack of accommodations requested by Manuao; and LADMC's nondiscriminatory practices. Nelson's declaration described the Rollins Nelson entities' lack of affiliation with LADMC; his lack of knowledge of Manuao's national origin; the

9

lack of complaints from Manuao; and the justification for the elimination of Manuao's position.

The motion sought summary adjudication of Manuao's claims on the following grounds.

Rollins LTC and Rollins GRP should each be dismissed because neither was Manuao's employer.

As to the first and second causes of action for breach of express and implied contract and breach of the covenant of good faith and fair dealing, defendants argued Manuao could not establish a prima facie case because she did not enter into a contract with respect to her employment with LADMC and because she was an "at-will" employee.

As to the third cause of action for wrongful termination in violation of public policy under FEHA, defendants argued Manuao could not establish a prima facie case because the elimination of her job did not violate any recognized public policy.

As to the fourth cause of action for discrimination in violation of FEHA and/or CFRA, defendants argued Manuao could not establish a prima facie case because the undisputed material facts did not demonstrate a discriminatory motive, none of her protected characteristics was a substantial motivating factor in defendants' decision to eliminate her job, and she was not a qualifying employee for a CFRA leave of absence because she had not worked for LADMC for more than a year.

As to the fifth cause of action for harassment in violation of FEHA and/or CFRA, defendants argued Manuao could not establish a prima facie case because defendants' actions were not substantially motivated by a protected characteristic, their alleged conduct was not severe and pervasive, and Manuao was not a qualifying employee for a CFRA leave of absence.

10

As to the sixth cause of action for retaliation in violation of FEHA and/or CFRA, defendants argued Manuao could not establish a prima facie case because the undisputed facts did not establish a causal link between the alleged protected activity and an adverse employment action or that any retaliation occurred.

As to the seventh cause of action for failure to accommodate in violation of FEHA and/or CFRA, defendants argued Manuao could not establish a prima facie case because defendants accommodated her alleged disability and she was not a qualifying employee for a CFRA leave of absence.

As to the eighth cause of action for unfair business practices (Bus. & Prof. Code, § 17200), defendants argued Manuao lacked standing to prosecute the cause of action because the claim was not alleged as part of a class or representative action.

As to the ninth cause of action for concealment, defendants argued Manuao could not establish a prima facie case because she was an "at-will" employee and defendants had no contractual or fiduciary duty of disclosure to her.

As to the eleventh cause of action for violation of the WARN Act, defendants argued Manuao could not establish a prima facie case because defendants fully complied with the WARN Act regarding the sale of SLMC.

As to the twelfth cause of action for unsafe workplace conditions (Lab. Code, §§ 232.5, 6310), defendants argued Manuao could not establish a prima facie case because she did not complain to defendants about any unsafe, unlawful, or illegal working conditions.

As to the thirteenth cause of action for whistleblower retaliation (Lab. Code, § 1102.5), defendants argued Manuao

11

could not establish a prima facie case because she did not complain to defendants about any unsafe, unlawful, or illegal working conditions, and the undisputed facts did not establish a causal link between her alleged protected activity and an adverse employment action.

As to the fourteenth cause of action for failure to provide personnel records (Lab. Code, § 1198.5), defendants argued Manuao could not establish a prima facie case because defendants timely honored Manuao's request for her personnel documents.

As to Manuao's claim for punitive damages, defendants argued this claim failed as a matter of law because none of the defendants acted toward Manuao with malice, fraud, or oppression, and also failed as a matter of law as to Hildy because Hildy was never a managing agent of any of the named corporate defendants.

3. *Manuao files no opposition to the summary judgment motion*

Over the ensuing 10 months after defendants filed their motion, Manuao did not respond or object to defendants' evidence, did not seek to depose any of the witnesses who submitted declarations in support of the motion, and did not file a memorandum of points and authorities or separate statement in opposition to the motion.

On September 26, 2023, the parties stipulated to dismiss the tenth cause of action for intentional infliction of emotional distress.

On November 9, 2023, defendants filed a notice of non-opposition to their motion. They specified "the last day for

[Manuao] to file and serve her opposition papers" to the motion "was November 2, 2023," but "[a]s of the filing of this notice, Defendants have not been served with any opposition from [Manuao]," nor did defendants' counsel's review show any opposition documents filed with the court.

With their notice, defendants also included reply arguments, arguing the two Rollins Nelson entities should be dismissed for lack of evidence they were Manuao's employer, Manuao failed to submit any evidence to meet her burden on each of the remaining causes of action, the individual defendants should be dismissed because they were acting within the scope of their duties and did not engage in harassing behavior toward Manuao, and the court should dismiss the punitive damages claim because Manuao voluntarily dismissed her claim for intentional infliction of emotional distress and failed to submit any evidence to support a triable issue as to malicious conduct. Defendants requested that the trial court grant summary judgment "[b]ased on the foregoing and Defendants' moving papers, as well as Plaintiff's failure to file any opposition brief."

Manuao's attorney was served with this notice and reply arguments the same day they were filed. Manuao did not file any motion seeking a continuance of the motion hearing or asserting good cause for not timely filing her opposition.

C.    *Trial Court Ruling*

The trial court held the hearing on the summary judgment motion on November 16, 2023. Neither Manuao nor Manuao's attorney appeared at the hearing or made contact with the court.

In a 19-page order, the trial court granted respondents' motion in its entirety, "[a]fter full consideration of the papers and

13

evidence filed, [and] inferences reasonably drawn therefrom." The court observed that Manuao failed to file any opposition, "effectively consenting to the Court granting the Motion." (See Cal. Rules of Court, rule 8.54(c) ["A failure to oppose a motion may be deemed a consent to the granting of the motion."].) But the trial court decided the motion on its merits. The trial court determined that defendants met their initial summary judgment burden on each of the issues presented by the summary judgment motion by demonstrating that one or more elements of each of Manuao's remaining causes of action could not be established. The court further noted Manuao failed to carry her summary judgment burden because she did not dispute defendants' evidence or present any evidence creating a triable issue of fact.

The court also ruled the Rollins Nelson entities met their summary judgment burden of demonstrating they were not Manuao's employer and all causes of action against them lacked merit, and that Manuao failed to meet her burden of demonstrating the existence of a triable issue of fact by failing to file any opposition.[1]

The trial court entered judgment in favor of defendants on December 22, 2023.

Manuao timely appealed.

---

[1] On appeal, Manuao does not challenge the trial court's ruling that defendants are entitled to summary judgment on her: claims against the Rollins Nelson entities; punitive damages claim; tenth cause of action for intentional infliction of emotional distress because it was moot, having previously been dismissed; claim she was a qualifying employee for a CFRA leave of absence; and fourteenth cause of action for failure to provide personnel records.

## DISCUSSION

A.      *Summary Judgment Law and Standard of Review*

Summary judgment is appropriate when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law.  (See Code Civ. Proc., § 437c, subd. (c); see also *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)[2]  "In ruling on the motion, the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom ([citation], § 437c, subd. (c)), and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843, fn. omitted (*Aguilar*).)

A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense.  (See § 437c, subd. (p)(2); see also *Aguilar, supra*, 25 Cal.4th at p. 853; *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109.)  If the defendant satisfies this initial burden of production, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact.  (See § 437c, subd. (p)(2); *Aguilar*, at p. 850.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Aguilar*, at

---

[2]      Undesignated statutory references are to the Code of Civil Procedure.

15

p. 850.)  Thus, a party "cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact."  (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 981.)

"In an action asserting claims of discrimination based on disparate treatment and retaliation, the court applies a 'three-stage burden-shifting test.'"  (*Batarse v. Service Employees Internat. Union, Local 1000* (2012) 209 Cal.App.4th 820, 831-832 (*Batarse*); see *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 (*Guz*); *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*).)  "At trial, the plaintiff bears the initial burden to establish a prima facie case of discrimination or retaliation; if he does so, a presumption of discrimination or retaliation arises. [Citations.]  The burden then shifts to the employer to rebut the presumption by producing admissible evidence that its adverse employment action was taken for a legitimate, nondiscriminatory or nonretaliatory reason.  [Citations.]  If it does so, the burden shifts back to plaintiff to 'attack the employer's proffered reasons as pretexts for discrimination' or retaliation, or to offer other evidence of intentional discrimination or retaliation."  (*Batarse*, at p. 831; see *Guz*, at p. 356; *Yanowitz*, at p. 1042.)

"A defendant moving for summary judgment, however, may skip to the second step of the analysis and demonstrate that it had a legitimate business reason, unrelated to race, other protected classification, or retaliation, for taking its employment action.  [Citation.]  The plaintiff then has 'the burden to *rebut* this facially dispositive showing by pointing to evidence which nonetheless raises a rational inference that intentional discrimination [or retaliation] occurred.'"  (*Batarse, supra,*

16

209 Cal.App.4th at pp. 831-832; see *Guz, supra,* 24 Cal.4th at p. 357.)

"The court's assessment of whether the moving party has carried its burden—and therefore caused a shift—occurs before the court's evaluation of the opposing party's papers." (*Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 367 (*Y.K.A.*).) "[S]ummary judgment is improper '[w]here the evidence submitted by [the] moving [party] does not support judgment in his favor.'" (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1196 (*Thompson*).)

The opposition to a motion for summary judgment must include an opposition memorandum, evidence supporting the opposition, and "a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating if the opposing party agrees or disagrees that those facts are undisputed. The statement also shall set forth plainly and concisely any other material facts that the opposing party contends are disputed. Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence." (§ 437c, subd. (b)(3); see *id.*, subd. (b)(2); Cal. Rules of Court, rule 3.1350(d)-(f).) The separate statement requirements "serve[] two functions: to give the parties notice of the material facts at issue in the motion and to permit the trial court to focus on whether those facts are truly undisputed." (*Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1210 (*Parkview*); see *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 31 (*North Coast*).) "'Separate statements are required not to satisfy a sadistic urge to torment lawyers, but rather to afford due process to opposing parties and to permit

17

trial courts to expeditiously review complex motions for . . . summary judgment to determine quickly and efficiently whether material facts are in dispute.'" (*Parkview*, at p. 1210.)

"Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion." (§ 437c, subd. (b)(3).) However, "courts have held that the opposing party's failure to file a proper separate statement as required by section 437c, subdivision (b), is grounds for summary judgment only where the moving party has met its initial burden of proof." (*Thompson, supra,* 11 Cal.App.5th at p. 1196; see *Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 412 (*Kojababian*); *Thatcher v. Lucky Stores, Inc.* (2000) 79 Cal.App.4th 1081, 1086-1087; cf. *Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 226-227 [where moving defendant met initial burden on summary judgment by submitting a declaration to support its motion, plaintiff's "failure to file a timely opposition, including a separate statement, was sufficient grounds to grant summary judgment. His failure to submit any evidence showing a triable issue of fact was also sufficient grounds to grant the motion."].) Thus, "[w]hile subdivision (b) of section 437c allows the court, in its discretion, to grant summary judgment if the opposing party fails to file a proper separate statement, this provision does not authorize doing so without first determining that the moving party has met its initial burden of proof." (*Thatcher,* at p. 1086; see *Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305 ["Unless the moving party meets its burden, summary judgment cannot be ordered, even if the opposing party does not respond sufficiently or at all."].)

We "generally review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law" (*Parkview, supra,* 133 Cal.App.4th at p. 1208), while "[a] trial court's decision to grant a motion for summary judgment because the opposing party failed to comply with the requirements for a separate statement . . . is reviewed for an abuse of discretion" (*ibid.*). Accordingly, here we first determine independently whether defendants' moving papers and evidence establish their right to summary judgment as a matter of law (see *Y.K.A., supra,* 174 Cal.App.4th at pp. 363-365), and then whether the trial court abused its discretion under the circumstances by granting summary judgment for defendants after Manuao failed to oppose their motion (see *Parkview,* at p. 1208).

B.      *Summary Judgment Was Proper Because Defendants Met*
        *Their Initial Burden and Manuao Made No Opposition*

Here, the trial court did not err in ruling defendants met their initial burden. To be entitled to summary judgment in their favor, defendants were required to present evidence sufficient to make a prima facie showing that Manuao could not establish one or more elements of each of her causes of action, or there was a complete defense to the cause of action. (See § 437c, subd. (p)(2); *Aguilar, supra,* 25 Cal.4th at p. 853.) "A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.] No more is called for." (*Aguilar,* at p. 851.) Moreover, "'"[w]hen no affidavits are filed in opposition to a motion for summary judgment, the court is entitled to accept as true the facts alleged in the movant's affidavits, provided they

19

are within the personal knowledge of the affiant and are facts to which he could competently testify.""" (*Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1014 (*Lyons*).)

To the extent Manuao asserts that various portions of her deposition testimony create triable issues of fact, the arguments are forfeited because she does not support her position with reasoned argument and relies on string citations from her deposition without explaining what facts in those citations create material issues of fact. Where an appellant seeking review of the grant of a motion for summary judgment against her "gives us a string citation with no clue as to the contents of the citations," de novo review "'does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues.'" (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230, 252.) That is because "'[a]s with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed.'" (*Id.* at p. 230; *id.* at p. 251 [plaintiff failed to meet burden on appeal where he provided a string of unexplained deposition citations and "fail[ed] to explain why the[] alleged [record] deficiencies warrant reversal"]; see *In re A.C.* (2017) 13 Cal.App.5th 661, 672 ["'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited].'"]; *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316 ["where evidence is not referenced, is hidden in voluminous papers, and is not called to

20

the attention of the court at all, a summary judgment should not be reversed on grounds the court should have considered such evidence"].)[3]

In all events, as stated, we examine whether defendants met their initial burden on summary judgment. (See *Y.K.A., supra,* 174 Cal.App.4th at p. 367.)

1. *Contract claims (first and second causes of action)*

The elements of a cause of action for breach of contract are "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." (*Reichert v. General Insurance of America Co.* (1968) 68 Cal.2d 822, 830; accord, *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made.*" (*Guz, supra,* 24 Cal.4th at p. 349.)

Defendants made a prima facie showing that Manuao could not establish at least one element of her first two causes of action because they presented evidence of an express at-will employment agreement between defendants and Manuao. Defendants proffered evidence establishing that Manuao received

---

[3] Manuao does not argue that any exception to forfeiture applies. (See, e.g., *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 654, fn. 3 ["parties may advance new theories on appeal when the issue posed is purely a question of law based on undisputed facts, and involves important questions of public policy"]; see also *Guardianship of Stephen G.* (1995) 40 Cal.App.4th 1418, 1422 [forfeiture does not apply to recently announced rule of law].)

LADMC's employee handbook; acknowledged receipt of the handbook that stated her employment with LADMC was at-will; never entered into a verbal or written agreement with LADMC modifying her at-will employment; and no one at LADMC gave her any verbal assurances that her employment would continue indefinitely. An at-will employment agreement precludes the existence of an implied contract requiring good cause for termination. (See *Camp v. Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 630.)

Although Manuao argues on appeal that the "presumption of at-will employment may be overcome by evidence of contrary intent" (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 677), she presented no such evidence in opposition to summary judgment. Instead, Manuao contends that portions of her deposition testimony submitted with defendants' evidence overcame the presumption of "at-will" employment status and prevented the burden from shifting. Specifically, Manuao cites her deposition testimony that she recalled signing an employment contract, and was told she would have continuing employment. But Manuao merely testified she "recall[ed] signing paperwork" when LADMC took over and recognized her signature on the acknowledgement confirming she received the handbook policies, did not recall whether any paperwork or the employee handbook stated her employment was at will, and was told she would remain in the position of business office director after LADMC took over. The cited deposition portions do not prevent defendants from making a prima facie showing because they do not support Manuao's assertion she was not an at-will employee.

2. *FEHA discrimination, harassment, and retaliation; wrongful termination in violation of public policy, and unfair business practices (third, fourth, fifth, sixth, and eighth causes of action)*

To establish unlawful discrimination or retaliation, a plaintiff must provide evidence that "(1) he [or she] was a member of a protected class, (2) he [or she] was qualified for the position he [or she] sought or was performing competently in the position he [or she] held, (3) he [or she] suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." (*Guz, supra,* 24 Cal.4th at p. 355.) As noted above, a defendant moving for summary judgment on a cause of action for discrimination or retaliation may meet its initial burden by producing admissible evidence that its adverse employment action was taken for a legitimate nondiscriminatory or nonretaliatory reason. (See *Batarse, supra,* 209 Cal.App.4th at pp. 831-832; *Guz, supra,* 24 Cal.4th at p. 357.)

To establish a harassment claim, a plaintiff must show she was subject to conduct that was (1) unwelcome; (2) because of her age, race, disability (or other protected characteristics); and (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. (See *Carranza v. City of Los Angeles* (2025) 111 Cal.App.5th 388, 401; *Wawrzenski v. United Airlines, Inc.* (2024) 106 Cal.App.5th 663 (*Wawrzenski*), 693; see also Gov. Code, § 12940.) A ""single incident of harassing conduct"" may constitute harassment ""if the harassing conduct has unreasonably interfered with the plaintiff's work performance or created an intimidating, hostile, or offensive work environment."""" (*Carranza,* at p. 402; accord,

23

*Wawrzenski,* at p. 693; see Gov. Code, § 12923.)  A "'hostile work environment exists "when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of well-being.""" (*Wawrzenski*, at p. 693; accord, *Beltran v. Hard Rock Hotel Licensing, Inc.* (2023) 97 Cal.App.5th 865, 878.)

Defendants made a prima facie showing of a nondiscriminatory or nonretaliatory reason for termination of Manuao's employment:  LADMC eliminated Manuao's job and laid her off due to legitimate business concerns over efficiency and productivity at SLMC, and no circumstances suggest a discriminatory motive.  Defendants submitted evidence in the form of Manuao's deposition testimony and declarations by Rollins and Nelson establishing that Rollins and Nelson were concerned about costs and the efficiency and productivity of the business office; no one at LADMC ever made disparaging comments about Manuao's age, medical leave, or Samoan-American national origin during her employment; her medical leave was approved; the employee brought in to help manage her office was several years older than her; and Manuao never complained to LADMC management that she was treated poorly or unfairly because she was Samoan-American, because of her age, or because of any medical condition that she had.

Defendants also made a prima facie showing that Manuao could not establish at least one element of the harassment cause of action:  there was no evidence that anyone at LADMC made any threatening, vulgar, or otherwise offensive comments to her based on her age, Samoan-American heritage, or medical

24

condition. The meetings and counseling Manuao received were standard workplace interactions geared towards improving the business office's efficiency and productivity and investigating whether she had any role regarding her niece's complaint email, which praised Manuao's assistance and expressed frustration with conflicting directives from her other superiors.

Manuao contends that portions of her deposition testimony prevented the burden from shifting because they "established that [Manuao] was subjected to harassing and discriminating conduct throughout the time that she was working for [defendants], which pervasive and ongoing harassment created a hostile work environment, and [Manuao] suffered adverse employment actions due to same." Manuao provides no reasoned argument and does not address any facts with particularity as to this argument, and thus has forfeited the argument.

The deposition excerpts Manuao string cites as "contrary evidence" do not prevent the burden from shifting on her harassment cause of action or "'rebut defendants' facially dispositive showing'" of a legitimate reason for Manuao's termination of employment by "'rais[ing] a rational inference that intentional discrimination [or retaliation] occurred.'" (*Batarse, supra,* 209 Cal.App.4th at p. 832; see *Guz, supra,* 24 Cal.4th at p. 357.)

For example, the cited deposition sections contain Manuao's testimony that (1) Manuao believed Rollins, who is Filipina, initially liked her because Rollins misperceived that Manuao was also Filipina; (2) Manuao believed Nelson also initially misperceived she was Filipina because of a meeting where he told her to "go sit with your people," Rollins indicated a seat by her and another Filipino employee, and the other Filipino

25

employee told Nelson "she's not Filipino.  She's Samoan"; (3) Manuao observed a large number of Filipinos were hired after LADMC acquired the hospital but she "could be" mistaken as to their ethnicity; (4) Manuao felt Nelson's rearrangement of the business office furniture was a "sign of . . . intimidation" after she had a call with him where he told her to "get on board" and raised his voice while discussing why staff members continued to go to her for assistance instead of Mancilla, but she did not know if Nelson raised his voice or told her those things because of her age, medical issues, or because she was Samoan American; (5) Manuao believed Nelson wanted to terminate her employment "[b]ecause of previous events that occurred" but was "not certain" whether he wanted to fire her because of her age or because she was Samoan American, and "d[id] not know" whether he wanted to fire her because of her medical issues; (6) Manuao felt Nelson treated her poorly because he gave another employee her management duties and told her she was part of the reason Success had filed for bankruptcy; Nelson walked faster than her down the hall for the meeting about her niece's complaint email, which was "embarrassing" since she could not keep up with him with her limp; Nelson did not believe Taeleife wrote the multiple-page complaint letter and told Manuao "there is no way someone with very little experience can write a multiple-page letter"; Nelson raised his voice during the complaint email meeting, but she could not estimate the level and did not remember anyone having intimidating body language; and she believed Nelson's poor treatment of her, his accusations in front of coworkers, and raising his voice constituted unsafe or unhealthy working conditions.

26

This testimony does not prevent the burden from shifting to Manuao because it is not evidence that anyone at LADMC made any threatening, vulgar, or otherwise offensive comments to her based on her age, Samoan-American heritage, or medical condition; or raise a rational inference that discrimination or retaliation occurred.

Manuao's cause of action for wrongful termination in violation of public policy is premised on defendants' alleged "illegal conduct and other wrongful activity of discrimination, harassment and retaliation." "The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." (*Yau v. Allen* (2014) 229 Cal.App.4th 144, 154; accord, *Garcia-Brower v. Premier Automotive Imports of CA, LLC* (2020) 55 Cal.App.5th 961, 973.) A cause of action for wrongful termination in violation of public policy, where based on alleged FEHA violations, "rises and falls with those claims" on summary judgment. (*Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 62.)

Similarly, Manuao's cause of action for unfair business practices is premised on defendants' alleged "wrongful acts of discrimination and retaliation." (See Bus. & Prof. Code, § 17200 [unfair competition includes "any unlawful, unfair or fraudulent business act or practice"].) The unfair competition law "'"borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.)

27

Here, because defendants shifted the summary judgment burden and Manuao did not raise triable issues of material fact on her FEHA causes of action for discrimination, harassment, and retaliation, they cannot serve as a basis for her causes of action for wrongful termination in violation of public policy or unfair business practices.

3. *Failure to accommodate disability (seventh cause of action)*

"The elements of a failure to accommodate claim are '(1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of his position, and (3) the employer failed to reasonably accommodate the plaintiff's disability.'" (*Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 969; accord, *Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1192.) "[A]n employer who knows of the disability of an employee has an affirmative duty" to offer a reasonable accommodation. (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 950.)

Defendants made a prima facie showing that Manuao could not establish at least one element of her failure to accommodate cause of action: that defendants failed to reasonably accommodate Manuao's disability. Defendants' evidence in support of their motion, including Manuao's deposition and declarations from Hildy, Rollins, and Nelson, established that Manuao returned to work without any job restrictions, resumed her normal job duties, and did not seek any accommodations; she admitted that her high blood pressure did not affect her essential job duties; and LADMC approved her request for time off to attend subsequent medical appointments as an accommodation.

28

Manuao argues the burden did not shift because her deposition testimony establishes defendants never provided any accommodation or performed an interactive evaluation. Manuao provides no reasoned argument and does not address any facts with particularity as to this argument, and the argument is forfeited.

But even reviewing Manuao's string-cited deposition testimony, the deposition excerpts at most demonstrate she was suffering from high blood pressure over the two-year period of 2018 to 2019, as well as migraine headaches, sleeplessness, anxiety, loss of appetite, and inability to "think straight"; Manuao was taking medications that did not interfere with her job; Manuao used time off to go see the doctor for her high blood pressure and at times she was not able to go to work because her blood pressure was elevated or she had migraines, but could not estimate how many times each of those happened; Rollins and Nelson knew Manuao was seeking medical attention for high blood pressure and knee pain; Manuao notified Rollins on the occasions she was unable to come to work, and Rollins said "Okay"; Manuao did not ask for additional accommodations to help her do her job; Manuao visited the emergency room for migraine and difficulty breathing in September 2019, after which her treating physician put her on a leave of absence from work; Manuao notified Rollins of her medical leave and did not recall Rollins asking any personal or inappropriate questions about her medical condition; Manuao was permitted to return to work with no restrictions by her doctor on October 1, 2019, and provided a doctor's note to this effect to LADMC; no one at LADMC made any comments or treated her poorly for being out of work; and,

after she returned from leave, she took time off in October 2019 after a migraine episode at work.

This evidence suggests defendants accommodated Manuao's medical needs by approving leave and time off for medical appointments, and that she otherwise had no job restrictions due to her medical conditions or medications. It does not show defendants failed to reasonably accommodate Manuao's disability, nor does it establish there was a reasonable accommodation that would have been available had the parties engaged in the interactive process.[4]

### 4. *Concealment and violation of the WARN Act (ninth and eleventh causes of action)*

Defendants also met their initial summary judgment burden on Manuao's causes of action for concealment of the details of the hospital sale and violation of the WARN Act.

"[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact, and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of

---

[4] To the extent Manuao argues the burden did not shift as to "violation of the CFRA" on her failure to accommodate claim, this argument is forfeited because she does not challenge the trial court's ruling she was not a qualifying employee for a CFRA leave of absence. (See *Lee, supra,* 41 Cal.App.5th at p. 721; *In re A.C., supra,* 13 Cal.App.5th at p. 672.)

the concealment or suppression of the fact, the plaintiff must have sustained damage." (*Marketing West, Inc. v. Sanyo Fisher (USA) Corp.* (1992) 6 Cal.App.4th 603, 612-613; accord, *Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248.) The evidence defendants submitted in support of their summary judgment motion, which included declarations from Hildy, Nelson, and Rollins, was sufficient to make a prima facie showing that Manuao could not establish that LADMC, Nelson, Rollins, and Hildy (who was "not an officer, director, or shareholder" of any of the named entities) had any duty to disclose the contractual details of the hospital sale to Manuao beyond the WARN notice.

Manuao argues the summary judgment motion did not address "all of [her] claims of concealment," alleged in her complaint, including "that the transition and sale would not affect her employment," that she would remain in her position, would not be laid off, her seniority would be respected, and that defendants "concealed they had no intention to honor their representations and would not continue to employ [her]." The moving party "must address the allegations of material fact in the complaint" (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 171), but an issue of fact cannot be created by allegations in the complaint "unsupported by declarations or affidavits" (*Lyons, supra,* 40 Cal.App.4th at p. 1014). Here, defendants adequately addressed the allegations Manuao identifies by providing sufficient evidence to meet their prima facie burden of demonstrating that employment with LADMC was "at-will" and subject to termination "for any reason or no reason, with or without cause or notice"; that Manuao received a WARN Act notice with regard to her anticipated continued employment and

31

the possibility of mass layoffs; that she was told she would remain in the position of business office director after LADMC took over; and Manuao and LADMC never agreed to modify the "at-will" status of her employment.

On appeal, Manuao repeats the allegation from her complaint that she never received a WARN Act notice. But she provides no evidence or legal authority in support, forfeiting the argument the trial court erred in granting summary adjudication of her cause of action for violation of the WARN Act. (See *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721 (*Kim*) ["our review is limited to those issues that have been adequately raised and supported in the appellant's brief"]; *In re A.C.*, *supra*, 13 Cal.App.5th at p. 672 ["'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited].'"].)

In any event, the trial court did not err in granting summary adjudication on this cause of action. Under the WARN Act, "An employer may not order a mass layoff, relocation, or termination at a covered establishment unless, 60 days before the order takes effect, the employer gives written notice of the order" to "[t]he employees of the covered establishment affected by the order." (Lab. Code, § 1401, subd. (a), (a)(1).) The unrebutted evidence defendants submitted with their moving papers makes a prima facie showing that Success complied with all these aspects under the WARN Act when it provided notice of the SLMC hospital sale to its workforce on December 18, 2018, at least 60 days before the sale to LADMC closed on February 12, 2019.

32

### 5. *Unsafe workplace conditions and whistleblower retaliation (twelfth and thirteenth causes of action)*

Defendants also met their initial summary judgment burden on the causes of action for unsafe workplace conditions under Labor Code sections 6310 and 232.5, and whistleblower retaliation under Labor Code section 1102.5.

Labor Code section 6310 provides that, "[n]o person shall discharge or in any manner discriminate against any employee because the employee has . . . [m]ade any oral or written complaint to" the Division of Occupational Safety and Health (Cal-OSHA), governmental agencies having statutory responsibility for assisting Cal-OSHA, his or her employer, or his or her representative. (Lab. Code § 6310, subd. (a)(1).) Labor Code section 232.5, subdivision (c), provides that, "[n]o employer" may "[d]ischarge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions."

Labor Code section 1102.5, subdivision (b), provides that, "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for having exercised [his or her] rights under subdivision (a), (b), or (c)." (Lab. Code, §1102.5, subd. (d).) "'To

33

establish a prima facie case of retaliation, a plaintiff must show that she engaged in a protected activity, that she was thereafter subjected to adverse employment action by her employer, and there was a causal link between the two.'" (*Muller v. Automobile Club of So. California* (1998) 61 Cal.App.4th 431, 451.)

Defendants made a prima facie showing that Manuao could not establish at least one element of her causes of action under these statutes because they submitted evidence, including her deposition and the declarations of Hildy, Nelson, and Rollins, that she never complained to anyone at LADMC that she was harassed, discriminated against, or retaliated against, whether in violation of LADMC's written policies or on the basis of her age, medical condition, or race, ethnicity, or national origin. The same evidence established for the purposes of defendant's summary judgment burden that there was no evidence she complained about any purported unlawful or unsafe working conditions to any enforcement agency.

Manuao argues her deposition testimony statements are not "material facts" that could have shifted the burden. But a "deposition excerpt is precisely the type of evidence specified by the Code of Civil Procedure (§ 437c, subd. (b)) and our Supreme Court [citation] as proper evidence to support a summary judgment motion." (*McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1104; see Code Civ. Proc, § 437c, subd. (b) [stating that the moving party shall set forth material facts "supported by affidavits, declarations . . . [and] depositions."].)

### 6.    *Conclusion*

Having determined that defendants met their initial summary judgment burden on each of Manuao's causes of

actions, we conclude the trial court did not abuse its discretion by granting defendant's motion since Manuao failed to file an opposition or separate statement raising a triable issue of fact. (See *Kojababian, supra,* 174 Cal.App.4th at pp. 414, 418 ["Based on the uncontroverted declarations in support of the motion for summary judgment, the trial court correctly determined that no triable issue of fact remained because defendants' prima facie showing as to both causes of action was not rebutted by plaintiff"; no abuse of discretion to grant motion on its merits where plaintiff "did not submit a memorandum of points and authorities in opposition to the merits of defendants' motion or a separate statement supported by evidence"].)

C.    *Sanctions Motion*

After defendants filed their respondents' brief, and Manuao failed to file a reply brief despite being granted two extensions, defendants moved for sanctions, arguing this appeal is "utterly frivolous."

We deny defendant's request that sanctions be imposed against Manuao. "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650, accord, *California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 340.) However, "[a]n appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions." (*In re Marriage of Flaherty*, at p. 650.) Although we are unpersuaded by Manuao's contentions on appeal, "we do not

35

believe this appeal is so far afield a reasonable attorney, in good conscience, would find it completely without merit." (*Freeman v. City of Beverly Hills* (1994) 27 Cal.App.4th 892, 898.)

## DISPOSITION

The judgment is affirmed.  Defendants' motion for sanctions is denied.  Defendants are entitled to their costs on appeal.

MARTINEZ, P. J.

We concur:

FEUER, J.                          STONE, J.